## Commonwealth *v.* Snow, Appellant.

320

Argued March 22, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Donald J. Goldberg,* with him *Joseph Patrick Gorham, Garfield W. Levy* and *Albert S. Oliensis,* for appellant.

*Christopher F. Edley,* Assistant District Attorney, with him *Victor Wright,* Assistant District Attorney, and *Samuel Dash,* First Assistant District Attorney, for appellee.

OPINION BY ERVIN, J., July 21, 1955:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Philadelphia County after a verdict of guilty. Defendant had been indicted on charges of burglary, larceny and receiving stolen goods. The court withdrew the count of receiving stolen goods from the consideration of the jury.

From the evidence at the trial it appeared that between 6:00 and 6:30 a.m. on October 26, 1953, the Columbia Social Club in Philadelphia was broken into and ransacked. Approximately $50.00 was missing from a jar representing funds for a "Kiddies Christmas party." Mr. Brzeccek, president of the club, testified that he saw appellant and another man standing in the barroom by the cash register. He yelled "halt" to the two men and ran outside and yelled "help" and then saw the appellant come out of the ladies' room window with a crowbar with which he tried to attack Brzeccek. Thomas Atwood, one of the two men, got away but Brzeccek and an iceman apprehended the appellant. They took him inside and called the police,

who arrived a short time later and took the appellant into custody and confiscated $23.00 from his person.

After the Commonwealth presented its evidence, Atwood changed his plea to guilty upon the advice of his lawyer, who was satisfied as to the identification of his client by the iceman.

The principal question raised on this appeal is whether the lower court abused its discretion in refusing appellant's application for a continuance of the case. The crime occurred on October 26, 1953. The grand jury found a true bill November 23, 1953. The case was first listed for trial June 4, 1954. The codefendant Atwood at this time desired time to secure counsel. The case as to both defendants was continued. A week before the second trial date, July 2, Ralph C. Donohoe, Esquire, was retained by defendant Atwood. He requested and was granted a continuance because of a conflict with his prior vacation plans. The case was listed for the third time on September 9, 1954 before the Honorable Gerald F. Flood and was continued because of Mr. Gorham's illness on the motion of his associate, Philip Shuchman, Esquire. At that time the judge told Mr. Shuchman that if Gorham was not prepared to try at the next date, Shuchman would have to try the case. The fourth trial was listed for October 14, 1954 but was continued because of the appellant's illness. The case was finally listed a fifth time for trial on November 12, 1954. By a letter dated October 29, 1954 appellant's attorney, Gorham, requested the district attorney to remove the case from the trial list because he would be hospitalized for surgery at the time of trial. By a letter dated November 3, 1954 the district attorney advised Gorham that the case should be removed from the trial list by court order only and Gorham was advised to apply to the court immediately for a continuance.

Thereafter application .for continuance was made to Judge KUN on two occasions prior to the date for trial. The first application was by Mr. Shuchman and the second by Mr. Gorham. Both alleged Mr. Gorham's impending hospitalization as their basis. Judge KUN refused the applications. At the application for a continuance made by Mr. Shuchman on the day of trial the following occurred: "MR. SHUCHMAN: May it be noted of record, your Honor, that Mr. Gorham is in the hospital. THE COURT: Yes. It is also a matter of record that the Judge who fixed this date for trial told you that if the lawyer was not prepared, you would have to try the case and you understood that thoroughly. That is also a matter of record." Mr. Shuchman declined to represent appellant and took his seat in the section of the court room reserved for lawyers. The case went on to trial and appellant was found guilty by the jury. On the afternoon of the day of the appellant's conviction, Benjamin L. Long, Esquire, visited Judge KUN in chambers for the purpose of filing a motion for a new trial. Judge KUN refused to entertain the motion as sentence had already been imposed.

Just about a year intervened between the finding of the true bill by the grand jury and the date when trial was finally had. The sentence of a minimum of two and a maximum of five years in the Eastern State Penitentiary was not unduly severe in view of the appellant's prior record. He served eight months in Binghamton, New York, on a burglary charge; he served five or six months on another burglary charge at the Protectory in Phoenixville, Pa.; he served one year on a charge of larceny and receiving stolen goods in Bucks County, Pa.; and he had a number of other minor offenses. At the time of trial the appellant was 30 years old. He did not ask the court to appoint

other counsel for him and said that he would like to engage another attorney, if Mr. Gorham could not represent him.

An application for continuance is addressed to the sound discretion of the trial judge and the denial of a continuance will not be disturbed unless there is a manifest abuse of discretion. *Com. v. Meyers*, 290 Pa. 573, 577, 139 A. 374; *Com. v. Grosso*, 169 Pa. Superior Ct. 606, 84 A. 2d 239.

"Illness of counsel may be a sufficient reason for a continuance, especially where the party is not prepared to proceed without him, but it is not always or necessarily considered a good cause. In such cases, the court will more readily listen to and grant the motion when it is made at the first term after issue is joined, than when the proceedings have been long pending and the sickness is of long standing." 12 Am. Jur., Continuances, §12.

"The denial of an application for a second or further continuance of a cause on account of the illness or unavoidable absence of counsel is ordinarily not an abuse of the court's discretion, particularly . . . where the party is ably represented by other or associate counsel, where the illness of the attorney is such that his presence at the trial could not be expected, or where, on a previous postponement, the attorney agreed that he would try the case on the day or at the term to which the continuance was had." 17 C.J.S., Continuances, §114.

The lower court was well within the bounds of sound discretion in denying the request for continuance. *Wilson v. Lanagan*, 99 F. 2d 544 (C.A. 1st, 1938), cert. den. 306 U. S. 634 (court refused request for attorney where defendant had had ample time to retain counsel before trial); *Hardie v. U. S.*, 22 F. 2d

803 (C.A. 5th, 1928), cert. den. 276 U. S. 636 (counsel ill—continuance refused where defendant had had ample time to get other counsel). See also *Jackson v. Jackson,* 201 Okla. 292, 205 P. 2d 297 (1949); *Ellis v. State,* 265 S. W. 2d 113 (Tex. Cr. App. 1954); *Williams v. U. S.,* 203 F. 2d 85 (C.A. 9th, 1953), cert. den. 345 U. S. 1003.

In *Shores v. United States,* 80 F. 2d 942 (C.A. 9th, 1935), cert. den. 297 U. S. 705, 80 L. Ed. 993, four defendants had been jointly convicted of using the mails to defraud and conspiracy. Appellant's principal assignment of error was the trial court's failure to grant a continuance because of his counsel's illness. The Court of Appeals summarized the proceedings below as follows (pp. 942-943): "The appellant . . . presented an affidavit of a physician as to the condition of the attorney to the effect that . . . he would be unable to return to his office for at least two weeks. . . . It is clear that the court was justified in not awaiting the uncertain event of the recovery of the attorney who was ill. A motion for continuance is addressed to the discretion of the trial court, and unless that discretion is abused, there is no error in the ruling thereon." There, as in the present case, appellant contended that it was unconstitutional to deprive him of the assistance of counsel who had prepared his case. But the court pointed out that there were no cases upholding such a doctrine. The appellant further urged, as in the instant case, that he was thus deprived of meritorious defense. The court said at page 944: "In view of the abundant testimony as to the connection of Howard Shores [appellant] with the fraudulent scheme, we are left wholly in the dark as to the defense he sought to interpose . . ., nor is it disclosed in the briefs by such attorney who now represents him on this appeal."

Even the vigorous dissenting opinion in the *Shores* case at page 951 stressed the point that the appellant knew only two days prior to trial of his attorney's incapacity. In the instant case, the appellant undoubtedly knew through his attorney more than two weeks in advance that his attorney would be unavailable and that a continuance would not be granted. The same court recently commented on the lack of diligence under similar circumstances in *Williams v. U. S.*, 203 F. 2d 85, 86 (C.A. 9th, 1953), cert. den. 345 U. S. 1003, as follows: "The record indicates that the trial was held thirteen days after the request for a continuance was denied; and there is no showing that appellant made any attempt during that time to substitute counsel."

In *Com. v. Hicks,* 173 Pa. Superior Ct. 395, 397, 398, 98 A. 2d 478, where the lower court's denial of a continuance on ground of absence of codefendant in Korea was affirmed, this court pointed out that "in determining whether a continuance should have been granted the nature of the crime and the circumstances attending it are to be considered."

In the present case, the nature of the crime was such that the appellant's guilt was clearly indicated from the evidence. He was observed inside of a damaged building with an open window at six o'clock in the morning in company with another man who pleaded guilty. He ran and was apprehended immediately after leaving the building through the open window. Approximately half of the money reported stolen was on his person. The facts in the case were simple, straightforward and compelling. Counsel for the codefendant recognized as much and had his client change his plea to guilty at the close of the Commonwealth's case. There is nothing to indicate that the

presence of appellant's counsel would have changed the result in this case.

Appellant contends that for "want of benefit of counsel, an ingredient of unfairness" entered into his trial which amounted to a denial of due process of law. See *Com. ex rel. Popovich v. Claudy,* 170 Pa. Superior Ct. 482, 486, 87 A. 2d 489. The Supreme Court of the United States in *Uveges v. Pennsylvania,* 335 U. S. 437, 440 (1948), said: "Some members of the Court think that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. . . . Others of us think that when a crime subject to capital punishment is not involved, each case depends on its own facts. [Citation omitted.] Where the gravity of the crime and other factors— such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, the latter group hold that the accused must have legal assistance under the Amendment . . . whether he requests counsel or not."

There is nothing in the present case to indicate that appellant lacked the capacity to represent himself either because of age, education, mental incapacity, experience, or otherwise. He was 30 years old at the time of trial and had had extensive criminal experience dating back to 1941 which included three felony convictions—two of them burglaries. Therefore, the mere act of embarking upon trial of appellant without counsel was not a denial of due process of law. *Betts v. Brady,* 316 U. S. 455, 471 (1942). If the lower court in the instant case was deprived of jurisdiction for want of due process of law, it had to be as a result

of fundamental unfairness occurring during the course of the trial. Such unfairness coupled with absence of counsel would have been a violation of the Fourteenth Amendment. *Uveges v. Pennsylvania,* supra. See also *Com. ex rel. Hovis v. Ashe,* 165 Pa. Superior Ct. 30, 67 A. 2d 770, aff'd. 364 Pa. 81, 70 A. 2d 630, cert. den. 339 U. S. 970; *Com. ex rel. Hallman v. Tees,* 175 Pa. Superior Ct. 448, 452, 106 A. 2d 899. There was no unfairness in appellant's trial, despite numerous allegations to the contrary.

The record is devoid of any unfairness wrought upon the appellant and a fortiori devoid of unfairness so fundamental as to constitute a denial of due process of law under the Fourteenth Amendment. Each and every one of the twenty instances of unfairness or error during the trial discussed by appellant lacks merit. Let it suffice to say that even the most noteworthy examples of unfairness set forth vanish completely when read in context and upon a review of the record as a whole. What this Court so aptly said in *Com. ex rel. Popovich v. Claudy,* supra, pages 485-487, might well apply here: "Relator relies solely on his youth and alleged inexperience to establish a denial of due process in the absence of counsel at the time he pleaded guilty to charges of burglary and attempted burglary. *He attempted to create an issue of federal due process by adopting in his petition some of the language appearing in Uveges v. Pennsylvania,* 335 U. S. 437. . . . The Due Process Clause of the Fourteenth Amendment to the Federal Constitution is not susceptible to reduction to any such formula. . . . Relator has not advanced, and from our own examination we cannot discover, any reason that would sustain a conclusion that the presence of counsel would have altered the disposition of his case." (Emphasis added)

In this case appellant did not request the appointment of other counsel by the court. He stated that he wanted to employ other counsel himself. The attorney, Philip Shuchman, who appeared in court for appellant several times, was in court with appellant at the time of trial. He had been told previously by the court that he would be obliged to represent appellant if Gorham could not appear. If the appellant were permitted to escape punishment by this ruse, he would fare much better without than with counsel. The appellant was out on bail and presumably knew of his counsel's unavailability and, therefore, had ample time to retain substitute counsel if he desired to do so. The court should not have appointed counsel for him because he was not indigent and was able to employ counsel himself. This is unlike *Com. v. Strada,* 171 Pa. Superior Ct. 358, 90 A. 2d 335, where counsel was permitted to withdraw in chambers at the time of trial in the absence of the defendant, without his having an opportunity to be heard. Unlike the *Strada* case, the present appellant was aware of the court's ruling on the application for a continuance and is presumed to have known that the continuance was refused several days prior to the date of trial. Here the trial court directed Shuchman to represent the appellant. He remained in the court room and should have and probably did observe everything that took place in the trial. If lawyers are permitted to do this and then, after an adverse result, make the contention that their client was unrepresented, a great travesty of justice will occur. This appears to us to be an effort by the appellant, who was caught in the act of burglary, to escape punishment when he had no real defense to the charge.

We have reviewed the entire record and believe that the appellant had a fair trial and that no substantial error was committed by the lower court.

The judgment of sentence is affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and it is ordered that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.